# United States Court of Appeals for the Federal Circuit

CORRECTED: 2/28/05

04-7085

R. EDWARD BATES,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

David D'Alessandris, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Kiesler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simkin, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel and Martin J. Sendek, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Opinion Per Curiam

# United States Court of Appeals for the Federal Circuit

04-7085

R. EDWARD BATES,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  February 28, 2005

_____

Before NEWMAN, BRYSON, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK.  Concurring opinion filed by Circuit Judge BRYSON.

DYK, Circuit Judge.

The Secretary, acting through the General Counsel, terminated appellant R. Edwards Bates' ("Bates") accreditation to represent claimants before the Department of Veteran Affairs ("VA").  Bates sought review before the Board of Veterans Affairs ("the Board").  The Secretary declined to issue the Statement of the Case ("SOC") that Bates required to pursue his appeal.  He then sought mandamus from the United States Court of Appeals for Veterans Claims to order the Secretary to issue the SOC so that he could appeal to the Board.  The court found that the Board had no jurisdiction over the appeal, and accordingly, the court would have no jurisdiction over an appeal from the Board, thus rendering mandamus unavailable.  We reverse the decision of the Court of

Appeals for Veterans Claims and remand with instructions to issue the requested writ of mandamus.

## BACKGROUND

Appellant Bates is an attorney who represents claimants for benefits before the VA. Such representation is permissible only if an attorney is accredited by the VA pursuant to 38 U.S.C. §§ 5901 and 5904(a). Bates was accredited. On July 28, 2003, following a hearing, the General Counsel of the VA ("GC"), acting on behalf of the Secretary, terminated Bates' accreditation, acting under the authority of 38 U.S.C. § 5904(b) and 38 C.F.R. § 14.633. The GC concluded that Bates had "engaged in unlawful practice and violated laws administered by the Secretary." (J.A. at 49.) In particular, the GC found that Bates had "accepted unlawful compensation for preparing, presenting, and prosecuting claims for VA benefits in violation of 38 U.S.C § 5904(c)(1), . . . solicited and contracted for illegal fees in violation of 38 U.S.C. § 5905(1) . . . [and] deceived and misled a claimant." (Id.) Bates was also accused of violating 38 U.S.C. § 5904(c)(2) by seeking unreasonable fees from his clients, although the GC did not directly address that violation in making his decision, finding it subsumed in the other charges. (Id. at 48.)

Bates urged that the Secretary's action was reviewable by the Board, because the Board's jurisdictional statute provides for review of "decision[s] by the Secretary under a law that affects the provision of benefits," 38 U.S.C. § 7104(a) (2000) (incorporating by reference, 38 U.S.C. § 511(a)), and because the Secretary's decision to cancel his accreditation under 38 U.S.C. § 5904(b) was such a decision. Accordingly, in August 2003, Bates filed a Notice of Disagreement ("NOD") as to the

Secretary's decision with the VA's regional office and requested that the Secretary issue an SOC so that he could appeal to the Board. An SOC is a mandatory prerequisite to a Board appeal. 38 U.S.C. §§ 7105(a) and (d) (2000). The Secretary refused to issue the SOC, and thereby prevented a Board appeal. In October 2003, Bates filed a petition for extraordinary relief in the nature of a writ of mandamus in the Court of Appeals for Veterans Claims, requesting the court to order the Secretary to provide the SOC. The parties appeared to agree that Bates' entitlement to the writ under the All Writs Act ("AWA"), 28 U.S.C. § 1651(a), turned on whether the Board had jurisdiction to review the Secretary's action and whether the Court of Appeals for Veterans Claims ultimately had jurisdiction to review the Board's action.

The court held that it would possess jurisdiction to issue the writ only if the granting of Bates' petition could lead to a Board decision over which the court would have jurisdiction. The Court of Appeals for Veterans Claims held that the Board lacked jurisdiction in the first instance, and as a consequence, the court lacked jurisdiction, and therefore there was no authority to issue a writ of mandamus. 38 U.S.C. § 7252 (2000).

The court concluded that the provision which the Secretary noted, section 5904(b), was not "a law that affects the provision of benefits," and was therefore outside the Board's jurisdiction under 38 U.S.C. §§ 511(a) and 7104(a), and that the court therefore lacked jurisdiction under 38 U.S.C. § 7252. In holding section 511(a) to be inapplicable, the Court of Appeals for Veterans Claims distinguished our decision in Cox v. West, 149 F.3d 1360 (Fed. Cir. 1998). Bates v. Principi, No. 03-1903 (Vet. App. Feb. 19, 2004). Cox held that 38 U.S.C. § 5904(d), which authorizes the Secretary to withhold a portion of past-due benefits owed to a VA claimant and to pay those withheld

benefits to an attorney, pursuant to an otherwise valid fee agreement, was a provision that "affects the provision of benefits" and therefore that the Secretary's decisions under the statute were subject to review pursuant to 38 U.S.C. § 511(a). 149 F.3d at 1365.

The Court of Appeals for Veterans Claims distinguished 38 U.S.C. § 5904(d), at issue in Cox, from 38 U.S.C. § 5904(b), at issue in Bates' case. The court found the latter provision to "pertain[] to a decision to terminate the accreditation of an attorney [and to] . . . say[] nothing about VA benefits." Bates, slip op. at 3. Thus, the court dismissed Bates' petition for lack of jurisdiction. Id. at 4.

Bates timely appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292. Cox, 149 F. 3d at 1362.

## DISCUSSION

Our review of this question is governed by 38 U.S.C. § 7292(d)(1), which provides that this court, in reviewing decisions of the Court of Appeals of Veterans Claims, "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." Such legal interpretations are reviewed without deference. Jones v. Brown, 41 F.3d 634, 637 (Fed. Cir. 1994); Mayer v. Brown, 37 F.3d 618, 619 (Fed. Cir. 1994).

As we confirmed in Cox, the Court of Appeals for Veterans Claims "has the power to issue writs of mandamus in aid of its jurisdiction under the AWA." 149 F.3d at 1363; see also FTC v. Dean Foods Co., 384 U.S. 597, 603 (1966) ("The exercise of this [AWA] power . . . extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected."). The propriety of a writ of mandamus in this case turns on the question of whether the Court of Appeals for

04-7085                                    4

Veterans Claims would have jurisdiction to review the GC's decision. By virtue of 38 U.S.C. § 7252, the Court of Appeals for Veterans Claims has jurisdiction to review decisions of the Board, but it does not have jurisdiction to review other decisions of the Secretary. Thus, the question is whether the Board had jurisdiction over the appeal.

Section 7104(a) of 38 U.S.C. limits the Board's jurisdiction to "all questions in a matter which under section 511(a) of this title is subject to decision by the Secretary." Section 511(a) states:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a) (2000) (emphasis added).[1] The ultimate question before us is whether this case arises "under a law that affects the provision of benefits." Id.

I

The Secretary here, in deciding to terminate Bates' certification, acted pursuant to 38 U.S.C. § 5904(b). Section 5904(b) authorizes the Secretary to "suspend or exclude" agents and attorneys from practice before the VA. Bates argues that section 5904(b) is itself a "law that affects the provision of benefits" because if he is unable to

---

[1] The exceptions set forth in 38 U.S.C. § 511(b) are: (1) matters subject to 38 U.S.C. § 502 (Federal Circuit jurisdiction over Administrative Procedure Act review of VA rulemaking); (2) matters covered by 38 U.S.C. §§ 1975 and 1984 (jurisdiction of federal district courts over suits on Veterans' Group Life Insurance, National Service Life Insurance and U.S. Government life insurance); (3) matters arising under chapter 37 of title 38 (involving VA housing and small business loans); and (4) matters arising under chapter 72 of title 38, (covering the appeals process to the Board, the Court of Appeals for Veterans Claims, and, ultimately, this court and the Supreme Court).

04-7085                                    5

practice, his clients will not be able to secure the benefits to which they are entitled. We cannot agree. The relationship between the canceling of the appellant's accreditation and the securing of benefits by his clients is far too attenuated. Bates has made no showing that the cancellation of his accreditation has affected the delivery of benefits to any VA claimant. Not only could the appellant's clients find another attorney, the VA system provides claimants with a wide choice of possible representatives, including representatives of recognized veterans service organizations and claims agents in good standing with the VA. 38 C.F.R. § 14.629 (2004). The argument that 38 U.S.C. § 5904(b) is itself a "law that affects the provision of benefits" is unpersuasive.

This is not the end of the matter. A further question is whether subsection 5904(b) should be considered as a "law" separate and apart from the remainder of section 5904, or whether the entirety of section 5904 should be considered part of a single "law." Other subsections of section 5904 deal with matters closely related to the decertification provisions in subsection 5904(b). Subsection 5904(a) authorizes the Secretary to certify individuals for practice before the VA. Subsection 5904(c) regulates when, and what types, of fees may be charged by agents and attorneys, and subsection 5904(d), involved in our decision in Cox, authorizes contingency fees limited to 20% of the total amount of past-due benefits awarded, and provides for direct payment of such fees by the VA when appropriate. 38 U.S.C. § 5904 (2000).[2]

---

[2] Section 5904, titled "Recognition of agents and attorneys generally," reads in its entirety:

>     (a) The Secretary may recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims under laws administered by the Secretary. The Secretary may require that individuals, before being recognized under this section, show that they are of good moral

character and in good repute, are qualified to render claimants valuable service, and otherwise are competent to assist claimants in presenting claims.

  (b) The Secretary, after notice and opportunity for a hearing, may suspend or exclude from further practice before the Department any agent or attorney recognized under this section if the Secretary finds that such agent or attorney—

> (1)     has engaged in any unlawful, unprofessional, or dishonest practice;
>
> (2)     has been guilty of disreputable conduct;
>
> (3)     is incompetent;
>
> (4)     has violated or refused to comply with any of the laws administered by the Secretary, or with any of the regulations or instructions governing practice before the Department; or
>
> (5)     has in any manner deceived, misled, or threatened any actual or prospective claimant.

  (c)(1)   Except as provided in paragraph (3), in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case.  Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date.  The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.

  (2)   A person who, acting as agent or attorney in a case referred to in paragraph (1) of this subsection, represents a person before the Department or the Board of Veterans' Appeals after the Board first makes a final decision in the case shall file a copy of any fee agreement between them with the Board at such time as may be specified by the Board.  The Board, upon its own motion or the request of either party, may review such a fee agreement and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable.  A finding or order of the Board under the preceding sentence may be reviewed by the United States Court of Appeals for Veterans Claims under section 7263(d) of [Title 38].

  (3)   A reasonable fee may be charged or paid in connection with any proceeding before the Department in a case arising out of a loan made, guaranteed, or insured under chapter 37 of [Title 38].  A person who charges a fee under this paragraph shall enter into a written agreement with the person represented and shall file a copy of the fee agreement with the Secretary at such time, and in such manner, as may be specified by the Secretary.

  (d)(1)   When a claimant and an attorney have entered into a fee agreement described in paragraph (2) of this subsection, the total fee payable to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.

If section 5904 is itself a single law, we have already held that subsection 5904(d), which governs the amount that may be awarded to attorneys on a contingency basis from past-due benefits, "affects the provision of benefits." Cox, 149 F.3d at 1365. In that case, Cox, an attorney, represented a veteran before the VA in a claim for benefits, subject to a twenty percent contingent fee arrangement under which the Secretary was to pay the fee to the lawyer out of any past-due benefits as provided in subsection 5904(d). We reasoned that Cox's claim to entitlement to his fee was justiciable by the Board, as the claim required the Secretary, in reaching his decision, to necessarily interpret subsection 5904(d), a provision "that affects the provision of benefits." Id. Thus, if section 5904 is to be considered as a whole, subsection 5904(b) is part of a "law that affects the provision of benefits," and the Board has jurisdiction.

---

(2)(A)  A fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the attorney—

(i)  is to be paid to the attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim; and

(ii)  is contingent on whether or not the matter is resolved in a manner favorable to the claimant.

(B)  For purposes of subparagraph (A) of this paragraph, a claim shall be considered to have been resolved in a manner favorable to the claimant if all or any part of the relief sought is granted.

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, the Secretary may direct that payment of any attorneys' fees under a fee arrangement described in paragraph (1) of this subsection be made out of such past-due benefits.  In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award.

38 U.S.C. § 5904.

II

We think that section 511's reference to a "law" is to a single statutory enactment that bears a Public Law number in the Statutes at Large. Congress has not specifically defined the term "law," but both the Constitution and Section 106a of Title 1 of the United States Code make clear that a law is a bill that has been duly approved by both Houses of Congress and signed by the President (or enacted over his veto). U.S. Const., art. I, § 7, cl. 2; 1 U.S.C. § 106a (2000).[3] Congress has also made clear that such laws, once duly enacted, are to be published in the Statutes at Large. 1 U.S.C. § 112 (2000). Thus, a "law" is a Public Law appearing in the Statutes at Large. There is no basis in the statutory language, legislative history, or case authority for construing the term "law" to be limited to a particular statutory subsection, as the government urges. Nor is there a basis for construing the term "law," as the concurrence apparently seems to do, to be a particular statutory section. The cases cited by the concurrence, where the term "law" is used to describe a specific section of a statute, can hardly be read to hold as a matter of statutory construction that the term "law" should be limited to a particular numbered section of the law. Concurring Op., post at 4 n.2.

---

[3] Titled "Promulgation of laws," 1 U.S.C. § 106a sets forth the procedures by which a bill, order, resolution or vote of the Congress, "having been approved by the President, or not having been returned by him with his objections, becomes a law or takes effect."

Here, the relevant "law" is the public law that originally enacted section 5904, the Veterans Act of 1936, ch. 867, 49 Stat. 2031.[4]  Title II of the Veterans Act of 1936, entitled "Agents and Attorneys," was the predecessor of 38 U.S.C. § 5904.  Title II differed from the current section 5904 only in limited respects, including the imposition of a $10-per-claim limitation on attorney fees (and consequently the absence of a separate provision regarding contingency fees), and the inclusion of the criminal penalty provisions for improper practice (now separately codified as 38 U.S.C. § 5905). Compare Veterans Act of 1936, § 201, 49 Stat. at 2032, with 38 U.S.C. § 5904 (2000).

Title II of the Veterans Act of 1936 has never been repealed and, as noted, has remained largely unchanged since originally enacted in 1936.  The current codification of section 5904 reflects a series of amendments to the original law, as well as the placement of that law, together with other laws related to veterans that do not necessarily involve the provision of benefits, into Title 38.  These changes have transpired through the promulgation of consolidation statutes passed, inter alia in 1958 and 1988. Act of Sept. 2, 1958, Pub. L. No. 85-857, § 3404, 72 Stat. 1105, 1238-39; Veterans Judicial Review Act, Pub. L. No. 100-687, § 104(a), 102 Stat. 4105, 4108 (1988); renumbered § 5904 and amended by, Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-40, § 402, 105 Stat. 187-238-39; amended by VPub. L. 102-40, Title IV, § 402(b)(1), (d)(1), May 7, 1991, 105 Stat. 238, 239; amended by, Veterans Programs Enhancement Act of 1998, Pub. L. No. 105-368, §

---

[4]    The other provisions of the 1936 Act dealt with related issues:  Title I relaxed restrictions on compensation for World War Widows and Children; Title III provided the VA with the authority to issue subpoenas, make investigations, and administer oaths when processing benefits claims; Title IV covered miscellaneous

512, 112 Stat. 3315, 3341. Neither the history of the amendments to the law, nor its changing position in the United States Code through the passage of a series of consolidation statutes, alters the fact that, as originally enacted, 38 U.S.C. § 5904 was part of a Public Law "that affects the provision of benefits" and therefore is subject to review by the Board and the Court of Appeals for Veterans Claims under the terms of 38 U.S.C. § 511.

III

The history and purpose of section 511(a) confirm the correctness of our interpretation. In this connection, some understanding of the history of section 511(a) is necessary.

With minor exceptions, from the origin of federal provision of veterans' benefits until 1988, the Congressional philosophy was that benefits decisions by the executive should not be subject to judicial review. This philosophy was reflected in the predecessors to section 511, which generally precluded judicial review of benefits decisions.

The predecessor to section 511(a), namely section 211(a), was originally enacted as two separate provisions that were consolidated in 1958, resulting in 38 U.S.C. § 211(a).[5] This provision barred judicial review of the Administrator's decisions "on any question of law or fact concerning a claim for benefits or payments under any

---

areas, all relating to benefits claims; and Title V provided hurricane relief for World War veterans and their dependents. 49 Stat. at 2031-35.

[5] The first provision was enacted in 1933, under the Economy Act, ch. 3, 48 Stat. 9 (1933) and the latter in 1940 as an amendment to the World War Veterans' Act of 1924, see Act of Oct. 17, 1940, ch. 893, § 11, 54 Stat. 1193, 1197. Frederick Davis, Veterans' Benefits, Judicial Review, and the Constitutional Problems of "Positive" Government, 39

law administered by the Veterans' Administration."  38 U.S.C. § 211(a) (1958).  In 1970, Congress amended the statute expressly to tighten up "an apparent gaping hole" in the bar to judicial review that had been opened by a line of District of Columbia Circuit cases narrowly construing the language of the statute to bar review only of initial filings of claims.  H.R. Rep. No. 100-963, at 18 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5800 (citing Wellman v. Whittier, 259 F.2d 163 (D.C. Cir. 1958), Tracy v. Gleason, 379 F. 2d 469 (D.C. Cir. 1967), and the Act of August 12, 1970, Pub. L. No. 91-376, § 8(a), 84 Stat. 787, 790) (other citations omitted)).  This amendment was intended to preclude review of "any decision of the Administrator 'on any question of law or fact under any law administered by the Veterans' Administration.'"  Id. at 18-19, reprinted in 1988 U.S.C.C.A.N. at 5800.

Thus, prior to 1988, section 211(a) provided that, with the exception of review of decisions regarding life insurance and small business and housing loans,

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211(a) (1982) (codifying Act of Aug. 12, 1970, § 8(a), 84 Stat. at 790).  No independent judicial review of benefits decisions was available.  As noted by the Supreme Court in Johnson v. Robison, 415 U.S. 361 (1974), the two primary purposes of this pre-1988 version of the provision were "to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-

---

Ind. L.J. 183, 186 n.12 (1964) (tracing the 1958 version of section 511(a)—38 U.S.C. § 211(a) (1958)—back through the conversion tables to these two original enactments).

consuming litigation, and . . . to insure that the technical and complex determinations and applications of VA policy connected with veterans' benefits decisions will be adequately and uniformly made." Id. at 370 (footnotes omitted). [6]

If this objective of precluding judicial review had continued, it would have been appropriate to give a narrow construction to section 511(a), as is done with all provisions precluding judicial review. See Abbot Labs. v. Gardner, 387 U.S. 136, 140 (1967) (recognizing a basic presumption in favor of judicial review); see also de Magno v. United States, 636 F.2d 714, 721 (D.C. Cir. 1980) ("[J]urisdictional limitations are interpreted narrowly, with an eye both to avoiding potential constitutional difficulties, and to preserving the Courts' traditional role of deciding legal disputes."). But in 1988, the purpose, but not the language, of this section changed dramatically.

The passage of the Veterans' Judicial Review Act ("VJRA") provided veterans with their day in court. See Forshey v. Principi, 284 F.3d 1335, 1344-45 (Fed. Cir. 2002) (en banc) (summarizing the major changes to judicial review with the enactment of the VJRA); Beamon v. Brown, 125 F.3d 965, 967 (6th Cir. 1997) (same). As noted by one of the original House sponsors, the legislation was "intended to produce timely, consistent, and fair decisions for veterans in a truly independent court which will not be burdened by other cases having nothing to do with veterans." 134 Cong. Rec. H9258 (daily ed. Oct. 3, 1988) (statement of Rep. Solomon).

One might have expected this reversal of congressional policy concerning judicial review to have brought about the repeal of section 211(a). It did not. Rather, section

---

[6] A narrow exception to the foreclosure rule was carved out by the Supreme Court in Johnson, id. at 367, for certain constitutional challenges to the VA's actions.

211(a) continued to broadly bar judicial review of benefits decisions, but an exception was created for judicial review of such decisions by the newly created Article I court. 38 U.S.C. § 511(b)(4).[7]   At the same time, Congress added new sections to Title 38, reflected in today's versions of Chapters 71 and 72, reforming the existing internal mechanisms for the review of benefits decisions by the VA regional offices and by the Board; specifically providing for independent judicial review of the Board's final decisions by a new Article I Court of Veterans Appeals (today known as the Court of Veterans Appeals for Veterans Claims); and providing the Federal Circuit with exclusive appellate jurisdiction over the decisions of the Court of Appeals for Veterans Claims. Veterans' Judicial Review Act, § 301 (codified as amended at 38 U.S.C. § 7251 et seq.). Section 511(a) (then section 211(a))—originally designed to bar judicial review entirely—became the provision that defined the scope of the Board's jurisdiction, and therefore, that of the new Article I court.[8]

Thus, the effect of the 1988 legislation was to generally place judicial review of Secretarial decisions "under a law that affects the provision of benefits" within the

---

[7]      Section 211(a) was renumbered as section 511(a) in 1991.  Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 2, 105 Stat. 378, 388-89 (1991).

[8]      In keeping with the new role for the provision, Congress noted that "[t]he effect of [replacing "under any law administered by the Veterans' Administration providing benefits" with "under a law that affects the provision of benefits"] is to broaden the scope of section 211," and provided the example of a decision regarding the potential conflict in VA regulations with another law prohibiting discrimination against disabled persons as being reviewable through the VA appeals process as a decision under a law that affects the provision of benefits.  H.R. Rep. No. 100-963, at 27, reprinted in 1988 U.S.C.C.A.N. at 5809.

04-7085                                    14

specialized review process.[9] Congress plainly preferred this approach as a matter of policy, both because it avoided overburdening the district court system and because the district courts lacked the necessary expertise. As the House Report noted, the "courts already have far too many cases to handle," H.R. Rep. No. 100-963, at 22, reprinted in 1988 U.S.C.C.A.N. at 5804, and the legislation aimed to prevent reviewing courts from being "put in a position where [they have] no idea of an agency's views on a particular legal question." Id. at 27, reprinted in 1988 U.S.C.C.A.N. at 5809.

In view of the history of section 511(a), we see nothing to suggest that interpretation of the section in accordance with its plain language would disserve congressional intent behind the passage of the 1988 legislation. To the contrary, an interpretation of section 511(a) that generally places review of Secretarial decisions under a single piece of legislation relating in whole or in part to benefits first in the Board, and then in the Court of Appeals for Veterans Claims, clearly serves the congressional purpose.

This is particularly clear from the fact that Secretarial decisions under subsection 5904(b) are, as in this case, also likely to involve interpretations of other subsections that themselves are subject to the specialized review process. We held in Cox that subsection 5904(d) is subject to the specialized review process. 149 F.3d at 1365. We

---

[9] The only listed exceptions to this overall scheme were rules and regulations promulgated by the Secretary which are reviewed directly in this court under 38 U.S.C. §§ 511(b)(1) and 502; insurance disputes, which are reviewable in the district courts under 38 U.S.C. §§ 511(b)(2) and 1975; and matters arising under Chapter 37, pertaining to housing and small business loans, which, under 38 U.S.C. §§ 511(b)(3) and 3720, allow for suits against the Secretary in state or federal court.

have also held that the Board has jurisdiction over actions taken under subsection 5904(c). <u>See, e.g.</u>, <u>Scates v. Principi</u>, 282 F.3d 1362, 1366 (Fed. Cir. 2002) (discussing Board's power to assess reasonableness of attorney fees and order their reduction if necessary under § 5904(c)(2)); <u>Cox</u>, 149 F.3d at 1364 (same); <u>In re Wick</u>, 40 F.3d 367, 369 (Fed. Cir. 1994) (same). One of the grounds for terminating Bates' certification was an alleged violation of 38 U.S.C. § 5904(c)(1), for charging attorney fees to various claimants prior to their receipt of a final Board decision on their claims. Bates was also initially accused of violating of 38 U.S.C. § 5904(c)(2), for charging unreasonable fees. The facts of Bates' case thus illustrate the interrelatedness between the various subsections of 5904, and the likelihood that any Secretarial action to certify or decertify an attorney under 38 U.S.C. §§ 5904(a) or (b) will necessarily implicate interpretations of 38 U.S.C. §§ 5904(c) and (d). To hold that the latter subsections (c) and (d) are justiciable by the Board, but subsections (a) and (b) are not, would invite piecemeal adjudication of closely related issues, and undermine the congressional purpose.

IV

The concurrence proposes to depart from the plain meaning interpretation of section 511 on the theory that the majority's interpretation of the provision could, in the case of omnibus statutory enactments, confer jurisdiction over disputes that Congress could not have intended to refer to the Board, such as disputes over contracts or employment appeals. Concurring Op., <u>post</u> at 2-3. We need not address this interpretative issue here, since the law in question is not such an omnibus statutory enactment. In any event, our holding does not go so far as the concurrence suggests, and does not confer jurisdiction in the Board over the myriad disputes that may arise

under every "law" that "affects the provision of benefits." Section 511(a) does not apply to every challenge to an action by the VA. As we have held, it only applies where there has been a "decision by the Secretary." Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir. 2000). In the context of the history of this provision, the statute plainly contemplates a formal "decision" by the Secretary or his delegate.

Even where there has been a formal decision by the Secretary, other provisions of federal law specifically confer jurisdiction on other tribunals to resolve particular disputes, such as contract or employment disputes. See, e.g., Contract Disputes Act, 41 U.S.C. §§ 606 and 609(a) (2000); 5 U.S.C. § 7701 (2000). As we noted in Hanlin, with respect to section 511(a) itself, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Hanlin, 214 F.3d at 1321 (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)). Just as we held that section 511(a) cannot be read to preclude Tucker Act jurisdiction, section 511(a) cannot be read to preclude jurisdiction in other tribunals when that jurisdiction is specifically conferred by Congress. Id. at 1322.

In the case of contract and employment disputes, these other review mechanisms have been held to be exclusive. Contractor appeals may be pursued exclusively in the Court of Federal Claims or the appropriate agency board of contract appeals. England v. Sherman R. Smoot Corp., 388 F.3d 844, 852 (Fed. Cir. 2004) (citing the Contract Disputes Act, 41 U.S.C. §§ 606 and 609(a)). Employment disputes under the Civil Service Reform Act are exclusively appealable, if at all, to the Merit Systems Protection Board, under 5 U.S.C. § 7701, as part of the "integrated statutory

scheme set up by Congress to protect civil servants." <u>United States v. Fausto</u>, 484 U.S. 439, 444-51, 453 (1988) (holding that Civil Service Reform Act precluded review in the Court of Federal Claims of the underlying personnel decision giving rise to the claim for back pay).   Nothing we say today suggests that the Board has jurisdiction to review controversies that are committed by statute to other tribunals.

CONCLUSION

For these reasons we conclude that the Board had jurisdiction; that the Court of Appeals for Veterans Claims had jurisdiction; and that a writ of mandamus should issue to direct the Board to decide the matter.   Accordingly, the decision of the Court of Appeals for Veterans Claims is

<u>REVERSED AND REMANDED</u>.

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

04-7085

R. EDWARD BATES,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

BRYSON, <u>Circuit Judge</u>, concurring in the result.

I agree with the result reached by the court in this case, but not with the path the court follows to reach that result. In particular, I cannot agree with the court's construction of the phrase "law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). I would construe that phrase to refer only to specific legal provisions that affect the provision of veterans' benefits. The court, however, construes that phrase more broadly, to refer to any public law that contains some veterans' benefit provisions.

The problem is that public laws, particularly in recent years, have often not been confined to a single subject. Some public laws run to hundreds of pages and deal with a myriad of different subjects. Sometimes the multitude of subjects touched upon in a single public law include veterans' benefits. For example, the Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, 112 Stat. 107 (1998), runs to more than 400 pages. Among the various topics in that public law are three pages of provisions

dealing with veterans' benefits. Under the court's definition, the entire Transportation Equity Act is a "law that affects the provision of benefits" for veterans.

The court's construction of the phrase "law that affects the provision of benefits" as referring to an entire public law would appear to extend the jurisdiction of the BVA to a wide range of actions by the Secretary for which BVA appeals have never been considered appropriate. Consider, for example, the Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. No. 108-170, 117 Stat. 2042. That public law contains provisions extending and increasing benefits to veterans in various classes, and thus it clearly qualifies as a public law that "affects the provision of benefits" to veterans as the court construes that language in 38 U.S.C. § 511. But that public law also contains provisions relating to non-benefit-related matters such as the construction of VA facilities and the promotion and appointment of certain VA employees. Congress plainly did not intend for disputes arising under the portions of that public law dealing with employment and construction to be subject to the jurisdiction of the BVA. Yet that would seem to be the result of the court's construction of the phrase "law that affects the provision of benefits."[1]

The court's broad construction of section 511(a) is problematical because of section 511(b). Section 511(a) provides that the decision of the Secretary as to any

---

[1]    The 2003 statute is not unique in this regard. For example, the Veterans Benefits and Health Care Improvement Act of 2000, Pub. L. No. 106-419, 114 Stat. 1822, contains a number of provisions pertaining to veterans' benefits, but also contains other matters plainly outside the contemplation of laws "that affect[ ] the provision of benefits," such as provisions governing the pay of VA nurses and transactions involving the acquisition, disposition, and management of real property. See also, e.g., Veterans Millennium Health Care and Benefits Act, Pub. L. No. 106-117, 113 Stat. 1545 (1999) (statute contains provisions regarding veterans' benefits and provisions pertaining to a voluntary separation incentive program to reduce the level of employment in the Department of Veterans Affairs).

question within its scope "shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." Section 511(b) contains only four exceptions to section 511(a)'s bar to review, one of which is the exception that permits review by the Veterans Court. The other exceptions deal with narrow subject matters: the review of Departmental rules and regulations in this court; suits in district court on claims related to federally provided insurance; and suits under chapter 37 of Title 38 relating to housing and small business loans. Those four exceptions do not include review by specialized tribunals such as the Merit Systems Protection Board, the agency's Board of Contract Appeals, or the Court of Federal Claims. Thus, the court's construction of section 511 would appear to lead to the conclusion that certain employment and contract matters would be reviewable by the BVA and the Veterans Court.

The court resolves the problem of the statutory conflict created by its construction of section 511 in favor of the statutes that assign jurisdiction over employment and contract matters to specialized tribunals. But the preferable construction of section 511 is one that does not create such a conflict in the first place. It is clear that Congress did not intend to create, or believe it was creating, such a conflict in 1970, when it adopted what is essentially the current language of section 511, see Pub. L. No. 91-376, 84 Stat. 787, 790 (1970), or in 1988 when it amended section 511 to provide for review of veterans' benefits matters by the Veterans Court, see Pub. L. No. 100-687, 102 Stat. 4105 (1988). See H.R. Rep. No. 91-1166 (1970), reprinted in 1970 U.S.C.C.A.N. 3723, 3731 ("The restated section [now section 511] will make it perfectly clear that the Congress intends to preclude from judicial review all determinations with respect to

noncontractual benefits provided for veterans and their dependents and survivors.").

Moreover, the court's resolution of the "specialized tribunal" problem leaves another problem unaddressed. The court's construction of section 511 does not solve the broader problem of non-benefit-related matters that would not be committed under any circumstances to a specialized tribunal, but would be expected to be reviewed by a district court under the Administrative Procedure Act. As to such decisions arising under a public law that contains some veterans' benefit provisions, the court's approach would appear to render such non-benefit-related matters reviewable, if at all, only in the BVA and the Veterans Court, a result that Congress surely did not intend. Yet to ensure that such non-benefit-related matters fall outside the jurisdiction of the BVA and the Veterans Court, one has to circle back to the position that section 511(a) applies only to disputes arising under particular legal provisions pertaining to benefits.

The best approach, in my view, is simply to construe "law" in section 511 to refer to particular provisions of law, not to the disparate collection of legal provisions that may appear in a particular public law.[2] Under this construction, the question whether the

---

   [2]   The court refers to its "public law" construction as the "plain meaning" of section 511. I do not agree. It is certainly true the term "law" includes public laws, but that is not to say that <u>only</u> public laws are properly referred to as laws. For example, the statute that grants federal question jurisdiction to federal courts, 28 U.S.C. § 1331, prescribes the courts' jurisdiction as being based on the "Constitution, laws, or treaties of the United States," yet the term "laws" in that statute has not been limited to public laws. <u>See</u> <u>Illinois v. City of Milwaukee</u>, 406 U.S. 91, 99-100 (1972) (holding that the "natural meaning" of the term "laws" includes federal common law as well as statutes). The court's citations to the Constitution and Title 1 of the United States Code do not establish that a single statutory provision is not a "law." Indeed, it is commonplace to refer to single statutory sections and subsections as "laws," and not to reserve that designation exclusively for whole public laws. <u>See, e.g.</u>, <u>Gonzalez v. United States</u>, 275 F.3d 1340, 1343 (Fed. Cir. 2001) ("section 654 [of Public Law 105-85] . . . is a 'law conferring rights, privileges, or benefits' upon certain World War II veterans"); <u>United States v. Dela Cruz</u>, 358 F.3d 623, 625 (9th Cir. 2004) ("Section 844(e) [of Title 18] is a

Board has jurisdiction over an appeal would turn on whether the statutory provision in question "affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans," i.e., whether the particular statutory provision relates to the substance or procedures of the veterans' benefits system. In most cases that question will be easy to decide: Most of the statutes that pertain to the veterans' benefits system address subjects such as the conditions for eligibility, the procedures to be followed in determining eligibility, and the amount of the benefits to be paid.

In this case, the connection between the certification of lawyers and the conferral of benefits on veterans is not so obvious. Nonetheless, in light of the agency's longstanding practice of regulating the representation of veterans so as to ensure that the beneficiaries obtain and retain the benefits to which they are entitled, statutory provisions authorizing the certification and regulation of representatives of applicants for veterans' benefits are properly regarded as laws "that affect[ ] the provision of benefits." On that ground, I would hold that 38 U.S.C. § 5904(b) is such a law and that the Board of Veterans' Appeals therefore has jurisdiction to hear appeals from the Secretary's decisions under that statute.

In Walters v. National Association of Radiation Survivors, 473 U.S. 305 (1985), the Supreme Court reviewed the history of the veterans' benefits system, with particular attention to the role of attorneys within that system. The Court explained that the system for administering benefits was designed to be managed "in a sufficiently informal

---

law of general application"); Rayner v. Smirl, 873 F.2d 60, 65 (4th Cir. 1989) ("Section 441 [of Title 45] clearly is a law 'relating to railroad safety' under § 434"). This is not to say that a statutory section or subsection is the only meaning of the term "law," but simply that it cannot reasonably be claimed that the "plain meaning" of the term "law" is restricted to public laws.

way that there should be no need for the employment of an attorney to obtain the benefits to which a claimant was entitled, so that the claimant would receive the entirety of the award without having to divide it with a lawyer." Id. at 321. Section 5904(b), which governs the suspension or exclusion of agents and attorneys who have been certified to prepare, present, and prosecute claims for veterans' benefits, has been a part of the veterans' benefits system for many years. Along with the other subsections of section 5904, which govern certification (subsection (a)) and restrictions on fees charged by agents and attorneys (subsections (c) and (d)), subsection (b) has served as one of the means by which the agency has sought to ensure that veterans not be deprived of the benefits to which they are entitled. It is therefore properly considered a "law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."

Both the construction of section 511 and the analysis of section 5904(b) that I have proposed are consistent with our prior decision in Cox v. West, 149 F.3d 1360 (Fed. Cir. 1998). In that case, we upheld the ruling of the Veterans Court that 38 U.S.C. § 5904(d) is a law that affects the provision of veterans' benefits and thus falls within 38 U.S.C. § 511(a). Id. at 1365. The specific provision at issue in Cox authorized the Secretary to withhold a portion of the past-due benefits owed to a claimant and to pay those withheld benefits to an attorney. Because section 5904(d) authorized the Secretary to make decisions that directly affected the amount of the benefits that the claimant received, the relationship between the statute and the claimant's benefits was more direct in Cox than it is here. Nonetheless, the purpose of certification of attorneys is to ensure that claimants in the veterans' benefits system are competently and

honestly represented, to the end that they will receive the full measure of benefits to which they are entitled, without loss or reduction due to attorney incompetence or overreaching.  Because the purpose underlying section 5904(b) is the same as the purpose underlying section 5904(d), it is fair to say that section 5904(b) is "a law that affects the provision of benefits" to veterans and their survivors and dependents.  Thus, although I would not decide this case on the "public law" rationale employed by the majority, I agree that the writ of mandamus should issue.